FILED

2003 DEC 18 P 12: 20

U.S. DIST...

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANNA M. CIMOCHOWSKI<br>Plaintiff, | : | CIVIL ACTION NO: 3:00CV 363 (AHN) |
| v. | : | |
| THE HARTFORD PUBLIC SCHOOLS,<br>ET AL.<br>Defendants. | :<br>:<br>: | DECEMBER 16, 2003 |

## PLAINTIFF'S SUPPLEMENTAL MEMORANDUM
## IN OPPOSITION TO DEFENDANT AMATO'S DEFENSE OF QUALIFIED IMMUNITY

The defendants have interposed a special defense of qualified immunity for Defendant Amato because he supposedly was relying on legal advice when he denied the plaintiff her rights under the Teacher Tenure Act. The evidentiary support for that statement is an affidavit signed by Attorney Ann Bird, Assistant Corporation Counsel for the City of Hartford.

Attorney Bird's deposition was taken on December 5, 2003, and her testimony reveals that the court cannot credit her affidavit because she is not competent to offer testimony that Amato relied on legal advice. This is the pertinent portion of her testimony:

> Q. If you turn to the second page [of the affidavit] and look at paragraph five, it says, "Before making a decision to terminate Anna Cimochowski's employment, Superintendent Anthony Amato requested and obtained a legal opinion that the Teacher Tenure Act, Connecticut General Statute Section 10-151, did not apply to her." How do you know that?
>
> A. Because I gave him such a legal opinion.
>
> Q. To whom?

> A. To Mr. Amato. I believe it was delivered to him through Mr. Stacey and/or directly to Mr. Amato. It was an oral statement, oral opinion.
>
> Q. So it might have been that you gave the opinion to Mr. Stacey and Mr. Stacey gave it to Amato?
>
> A. Might have been delivered that way.
>
> Q. And are you saying it might have been that you gave it to Amato directly?
>
> A. Yes.
>
> Q. Do you know which it was?
>
> A. I don't have a clear recollection as I'm sitting here today.
>
> Q. Do you have any recollection at all, even a fuzzy one?
>
> A. I have a recollection of giving the opinion.
>
> Q. To someone?
>
> A. Yes.
>
> Q. But you don't know who?
>
> A. I know it was either Mr. Stacey together with Mr. Amato or Mr. Stacey on behalf of Mr. Amato. I know that Mr. Amato asked the question.

Exhibit A, pages 12-13.

Nor does Attorney Bird recall whether she was asked for legal advice by Mr. Amato or Mr. Stacey:

> Q. But how do you know it was asked by Mr. Amato?
>
> A. Well, because that's how I remember it.
>
> Q. Well, it might have been asked by Mr. Stacey.
>
> A. It might have been asked by Mr. Stacey on behalf of Mr. Amato,

2

that's correct.

Q. But you don't know one way or the other?

A. I don't remember right now one way or the other.

Exhibit A, pages 14-15.

Attorney Bird was testifying pursuant to a Rule 30 Notice of Deposition of the Hartford Public Schools. She was selected as the individual who supposedly was competent to testify about the legal advice given to Amato. See Exhibit A, pages 10-11.

Rule 56 of the Rules of Civil Procedure requires that affidavits filed in connection with summary judgment memoranda "be made on personal knowledge" and shall set forth such facts "as would be admissible in evidence." Rule 602 of the Federal Rules of Evidence sets out the basic evidentiary requirement that a "witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Because Attorney Bird does not have personal knowledge that Amato was given legal advice, and because her recollection of events was completely hazy, her testimony does not satisfy either Rule 56 of the Rules of Civil Procedure or Rule 602 of the Federal Rules of Evidence.

Mr. Amato himself testified that he did not remember whether he got legal advice. This is explained more fully on pages 29-30 of the Plaintiff's February 18, 2003 Memorandum in Opposition to Defendants' Renewal Motion for Summary Judgment.

There is a complete absence of admissible evidence that Amato received and/or relied on legal advice, and the qualified immunity defense fails as a matter of law.

3

THE PLAINTIFF,

By: _____
Leon M. Rosenblatt
Law Offices of Leon M. Rosenblatt
10 North Main Street, Suite 214
West Hartford, CT 06107-1988
(860) 523-8066
Federal Bar No.ct00284

## **CERTIFICATION**

This is to certify that a copy of the foregoing was mailed, postage prepaid, on this the 16th day of December, 2003, to:

Attorney Ann F. Bird
City of Hartford
Office of the Corporation Counsel
550 Main Street
Hartford, Connecticut 06103

Attorney Linda L. Yoder
Shipman & Goodwin LLP
One American Row
Hartford, CT 06103-2819

Leon M. Rosenblatt

```
                                                                    1

 1   UNITED STATES DISTRICT COURT

 2   DISTRICT OF CONNECTICUT

 3

 4
     ------------------------x
 5
     ANNA M. CIMOCHOWSKI,         :
 6
               Plaintiff,         :
 7
          -versus-                : No. 3:00CV 363(AHN)
 8
     THE HARTFORD PUBLIC
 9   SCHOOLS, ET. AL.,            :

10             Defendants.        :

11   ------------------------x

12

13             Deposition of ANN E. BIRD, taken

14   pursuant to Rule 30 of the Federal Rules of Civil

15   Procedure, at the law offices of Shipman & Goodwin,

16   LLP, Hartford, Connecticut, before Jacqueline

17   McCauley, RPR/CSR, a Notary Public in and for the

18   State of Connecticut, on December 5, 2003, at 1:10

19   p.m.

20

21

22

23

24

25
```

```
 1   basically was what it was.
 2          Q.   And Sidly & Austin?
 3          A.   Commercial litigation and products
 4   liabilities, mostly pharmaceutical types of products,
 5   defense.
 6          Q.   And Parkinson & Wolf?
 7          A.   That was a professional liability defense
 8   kind of firm, attorney malpractice, accounting
 9   malpractice were the primary kinds of things, security
10   brokers, that kind of thing.
11          Q.   Why did you leave Pepe & Hazard?
12          A.   I guess I wanted a life-style change
13   primarily.
14          Q.   What do you mean?
15          A.   I was not a successful rainmaker and I
16   wanted to work less intensely.
17          Q.   I want to mark as Exhibit 1 a copy of the
18   Notice of Deposition for today.
19                     (Plaintiff's Exhibit 1, marked for
20                      identification.)
21          Q.   You've seen that I take it?
22          A.   Yes.
23          Q.   This is a rule 30 Notice of Deposition in
24   which a particular person wasn't noticed, but rather
25   the Hartford Public Schools was noticed and the
```

```
 1   Hartford Public Schools was instructed to appoint an
 2   individual or individuals to testify about certain
 3   things that are specified in the deposition notice. I
 4   take it you are that person?
 5        A.   Yes.
 6        Q.   Who appointed you?
 7        A.   I guess I was appointed by me in
 8   collaboration with Attorney Yoder, because I have the
 9   role of representing, coordinating with Attorney Yoder
10   on behalf of the school system on behalf of the
11   defendants in this case.
12        Q.   Were any officials of the Hartford Public
13   Schools involved in that decision?
14        A.   Not that I am aware of.
15        Q.   So it was just you and Attorney Yoder?
16        A.   Yes.
17        Q.   And why did you appoint yourself?
18        A.   Well, because I'm the person that or I'm a
19   person who gave legal advice to Mr. Amato upon which
20   he relied in making the decisions that, some of the
21   decisions.
22        Q.   Who are other people --
23        A.   Who?
24        Q.   -- that gave legal advice to Mr. Amato?
25        A.   Ann Marie DeGraffenreidt,
```

12

```
 1    D-E-G-R-A-F-F-E-N-R-E-I-D-T.
 2         Q.   And where does she work now?
 3         A.   She happens to work for the Center for
 4    Children's Advocacy.
 5         Q.   She is a former associate of Shipman &
 6    Goodwin?
 7         A.   Yes.
 8         Q.   You have some documents that you brought
 9    in connection with the deposition notice.  May I see
10    them?
11         A.   Yes. I also brought the deposition notice,
12    but ...
13                  (Plaintiff's Exhibit 2, marked for
14                   identification.)
15         Q.   Exhibit 2 is a copy of your January 15,
16    2003 affidavit, correct?
17         A.   Yes.
18         Q.   If you turn to the second page and look at
19    paragraph five, it says, "Before making a decision to
20    terminate Anna Cimochowski's employment,
21    Superintendent Anthony Amato requested and obtained a
22    legal opinion that the Teacher Tenure Act, Connecticut
23    General Statute Section 10-151, did not apply to her."
24    How do you know that?
25         A.   Because I gave him such a legal opinion.
```

1   Q. To whom?

2   A. To Mr. Amato. I believe it was delivered
3   to him through Mr. Stacey and/or directly to
4   Mr. Amato. It was an oral statement, oral opinion.

5   Q. So it might have been that you gave the
6   opinion to Mr. Stacey and Mr. Stacey gave it to Amato?

7   A. Might have been delivered that way.

8   Q. And are you saying it might have been that
9   you gave it to Amato directly?

10  A. Yes.

11  Q. Do you know which it was?

12  A. I don't have a clear recollection as I'm
13  sitting here today.

14  Q. Do you have any recollection at all, even
15  a fuzzy one?

16  A. I have a recollection of giving the
17  opinion.

18  Q. To someone?

19  A. Yes.

20  Q. But you don't know who?

21  A. I know it was either Mr. Stacey together
22  with Mr. Amato or Mr. Stacey on behalf of Mr. Amato.
23  I know that Mr. Amato asked the question.

24  Q. How do you know that?

25  A. Because he was the one making the

1  decision.

2  Q. But how do you know he asked the question?

3  A. Well, I remember that the question was
4  asked that Mr. Amato wanted to know.

5  Q. So Mr. Amato thought about the question of
6  whether or not the Teacher Tenure Act applied to Dr.
7  Cimochowski and asked for some assistance in answering
8  it?

9  A. I don't know what Mr. Amato thought about.
10 I know that Mr. Amato asked the question that
11 encompassed the tenure act question, that a question
12 was asked what are the school system's
13 responsibilities and rights with respect to Dr.
14 Cimochowski's employment situation.

15 Q. How do you know he asked that question?
16 A. It's my recollection.
17 Q. What do you remember about it?
18 A. That the question was asked and then I
19 answered it.

20 Q. But how do you know it was asked by
21 Mr. Amato?

22 A. Well, because that's how I remember it.

23 Q. Well, it might have been asked by
24 Mr. Stacey.

25 A. It might have been asked by Mr. Stacey on

1   behalf of Mr. Amato, that's correct.
2       Q.   But you don't know one way or the other?
3       A.   I don't remember right now one way or the
4   other.
5       Q.   Now, Mr. Stacey held what position?
6       A.   He was the head of the human resources
7   department of the Hartford Public Schools.
8       Q.   Regardless of whether it came directly
9   from Mr. Amato or directly from Mr. Stacey I would
10  like you to state to the best of your ability what the
11  question was that was given to you.
12      A.   I don't have a verbatim recollection of
13  what the question was.  The substance of the question
14  was what are our responsibilities and our rights with
15  respect to Dr. Cimochowski's employment.
16      Q.   When was this issue raised?
17      A.   Sometime in the spring of -- sometime in
18  the months before the decision to fire her, the
19  termination letter was issued, which I believe was in
20  May of 1999, but I could have my years wrong.  So my
21  best recollection is that this question was asked as
22  to Dr. Cimochowski in March or April, but it might
23  have been early May of 1999. I don't think it was
24  March.  I think it must have been April or early May,
25  1999.